```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF ALABAMA
                    NORTHERN DIVISION


GRIBRITTER TAYLOR, on behalf of :
K.T., a minor,                  :
                                :
     Plaintiff,                 :
                                :
vs.                             :   CIVIL ACTION 11-0710-M
                                :
MICHAEL J. ASTRUE,              :
Commissioner of Social Security,:
                                :
     Defendant.                 :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 42 U.S.C. § 1383(c)(3), Plaintiff[1] seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income for children (hereinafter *SSI*) (Docs. 1, 12).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 21).  Oral argument was waived in this action (Doc. 20).  Upon consideration of the administrative record and the memoranda of the parties, it is

---

[1]Though this action was brought by Gribritter Taylor on behalf of her son, K.T., the Court will refer to the child as the Plaintiff.

1

**ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984).

At the time of the administrative hearing, Plaintiff was two years old (Tr. 32).  In claiming benefits, Taylor alleges disability due to asthma, acid reflux, status post removal of extra toes and fingers, and a communication disorder (Doc. 13).

The Plaintiff filed a protective application for SSI on December 9, 2009 (Tr. 95-97; *see also* Tr. 11).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Taylor had severe impairments, he was not disabled (Tr. 11-25).  Plaintiff requested review of the hearing decision (Tr. 5-7) by the Appeals Council, but it was

denied (Tr. 1-4).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Taylor alleges that:  (1) The ALJ improperly relied on the opinion of a non-examining physician; (2) the ALJ did not properly consider the combination of his impairments; and (3) the ALJ failed to consider the frequency of treatment and functional equivalence under Listing 103.03 (Doc. 12).  Defendant has responded to—and denies—these claims (Doc. 15).  The relevant evidence follows.

Records from Marengo Orthopaedics, dated June 26, 2009, reveal that Plaintiff was born with an extra digit on each of both hands and feet (Tr. 124-26).  The extra fingers had already been removed; plans were made for removal of the extra toes.

Records from the Bryan W. Whitfield Memorial Hospital demonstrate that the extra fingers on each hand were excised on February 3, 2009, the day he was born (Tr. 208, 219; *see generally* Tr. 127-219).  On April 12, Taylor was seen for congestion and wheezing (Tr. 202-09).  On April 14, Plaintiff was admitted for bronchitis, shortness of breath, dehydration, and vomiting; the infant had good muscle mass bilaterally and full range of motion of all joints (Tr. 187-201).  A chest x-ray was unremarkable and the infant was discharged two days later,

markedly improved, with a diagnosis of pneumonitis and esophageal reflux (Tr. 187; *cf.* Tr. 190).  On April 25, 2009, Plaintiff was seen for mild congestion and a cough (Tr. 180-86).  Taylor was admitted on to the hospital May 27 for two nights for treatment of pneumonitis and strep throat; he was discharged in markedly improved condition (Tr. 168-79).  On June 16, Plaintiff was treated for thrush (Tr. 158-67).  On July 16, the extra toe on each of Taylor's feet was surgically removed (Tr. 128-157).

On May 20, 2009, Dr. Steve Helm at the Allergy and Asthma Center of Tuscaloosa examined Plaintiff for a cough and chest congestion; his diagnosis was abnormal chest sounds and respiratory abnormalities (Tr. 233-35).  On August 21, the doctor noted that it was reported that the prescribed medicine at the last visit had worked well for Taylor; the child's diagnosis was the same along with the addition of milk as causing anaphylaxis (Tr. 230-32).  On December 28, Dr. Helm wrote, on a prescription notice, the following:  "To my knowledge, there is no legitimate reason for claiming a disability.  You may suspect fraud" (Tr. 229).

Records from Dr. Maurice Fitz Gerald demonstrate that Taylor was seen on twenty-two occasions between February 12 and December 23, 2009 (Tr. 236-302).  On March 3, Plaintiff had a

4

normal chest x-ray (Tr. 284); two weeks later, he had otitis media of the left ear and an upper respiratory infection (Tr. 277-80). An April 14 examination for pneumonia led to a hospitalization (Tr. 272-73). At a follow-up exam a week later, Taylor was diagnosed to have reactive airway disease and GERD (Tr. 270-71). On April 28, examination results led to the same diagnosis in addition to asthma; medications were changed (Tr. 267-69). On May 15, it was first noted that Plaintiff was overweight (Tr. 261-62). On October 20, Taylor was seen for an exacerbation of his asthma (Tr. 242-44). On December 23, Plaintiff was seen for reactive airway disease and an upper respiratory infection (Tr. 237-39).

  On January 20, 2010, Dr. Peter S. Bertucci, a non-examining physician, reviewing the medical evidence of record at that time, indicated that Taylor had no limitations except for less than marked limitations in his health and physical well-being (Tr. 303-08).

  On August 3, 2009, Dr. Anthony L. Tropeano stated that Plaintiff was doing well in the examination following the excision of his two toes (Tr. 313-15).

  On February 24, 2010, Dr. Helm noted that Plaintiff had no wheezing or labored breathing, though he did have an occasional

cough; the diagnosis was mild asthma (Tr. 317-20).

On March 17, 2010, records from the Bryan Whitfield Memorial Hospital show that Taylor was treated for a rash and pain on urination (Tr. 323-34).

On February 16, 2010, Plaintiff was seen at the Fitz-Gerald Perret Clinic for coughing, congestion, vomiting, and diarrhea; it was noted that he was in no acute distress and that he had good range of motion in all extremities (Tr. 339-41).  Taylor was diagnosed to have GERD, asthma and lactose intolerance.  On March 19, he was seen for a cough and congestion; Plaintiff was diagnosed with pharyngitis and pneumonitis (Tr. 336-38).

On November 3, 2010, records from the Children's Rehabilitation Services state that although his mother stated that Taylor had intermittent pain here and there, he ambulated well and he was developmentally normal; no intervention was necessary (Tr. 343).

Plaintiff was seen at Bryan Whitfield Memorial Hospital on June 13, 2010 for vomiting and diarrhea; he was diagnosed to have gastroenteritis (Tr. 353-60).  On November 20, Taylor was seen for an upper respiratory infection (Tr. 345-52).

Records from the Fitz-Gerald Perret Clinic show that Plaintiff was seen on April 22, 2010 for a follow-up

examination; though he had a heat rash, he was meeting milestones and appeared to be a well baby (Tr. 382-86). On July 12, Taylor was examined for coughing and wheezing (Tr. 380-81). On August 19, Plaintiff was seen for a well-baby assessment; he demonstrated normal eighteen-month milestones, but was diagnosed to have asthma, esophageal reflux, and an abrasion or friction burn on his left great toe (Tr. 375-79). On October 4, Taylor was seen for lymphadenopathy, asthma with acute exacerbation, and an upper respiratory infection (Tr. 372-74). On November 15, he was suffering from pharyngitis, pneumonitis, and asthma (Tr. 367-69). Plaintiff had a cough, congestion, and a runny nose on January 3, 2011 and was diagnosed with allergic rhinitis and asthma with acute exacerbation (Tr. 34-66).

Records from the Cahaba Early Intervention Services show that, on July 20, 2010, Plaintiff was noted to have responded appropriately to 3/3 items of sound presented and 8/8 visual stimuli (Tr. 416; *see generally* Tr. 391-418). Concerns were shown for his communication development in that he did not respond to different tones of a person's voice, did not follow commands without a visual cue, and did not use at least ten words; there was also concern for his adaptive development in that he did not fuss when his diaper needed changing, did not

7

sleep all night, and did not cooperate in dressing and undressing (Tr. 417-18).  Over the next ten months, Cahaba engaged Taylor in different activities, *e.g.*, coloring, singing, putting puzzles together, for guidance in following directions and learning different physical skills (Tr. 392-415, 420-23).  Plaintiff's mother reported that he was using more words and was following directions better on December 13, 2010 (Tr. 402).  On April 18, 2011, Taylor's mother reported that he was following directions better and was using words and phrases (Tr. 422).

   Records from the Fitz-Gerald Perret Clinic show that, on March 3, 2011, Plaintiff was noted to have allergic rhinitis and asthma with acute exacerbation (Tr. 446-48).  Four days later, Taylor was seen as a follow-up for fluid in his ears; he was noted to have abnormal movement in all extremities (Tr. 441-45).  Plaintiff was diagnosed to have otitis media, asthma, and an upper respiratory infection.  On March 17, Taylor had wheezing and rhonchi bilaterally; he was determined to have pharyngitis, pneumonitis, and otitis externa (Tr. 438-40).  On April 12, he had allergic rhinitis, asthma with acute exacerbation, and an upper respiratory infection (Tr. 433-34); six days later, he had pharyngitis and pneumonitis (Tr. 430-32).  On May 18, the diagnosis was asthma, GERD, and an upper respiratory infection

(Tr. 425-29); he was in no acute distress, but, again, abnormal movement of all extremities was noted.

Plaintiff claims that the ALJ improperly relied on the opinion of a non-examining physician, Dr. Bertucci, asserting that he did not have the entire record to review before giving his opinion (Doc. 12, pp. 5-6). The Court notes that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

In his decision, the ALJ summarized the opinion of Dr. Bertucci (Tr. 17), along with the rest of the evidence, in finding that Taylor was not disabled. Plaintiff correctly notes that the ALJ, in discussing the six functional equivalence domains, cites the evaluation form completed by Bertucci in four of the six domains as support for his opinions (Doc. 12, pp. 5-6; *cf.* Tr. 20-25, 303-08).

The Court, nevertheless, notes that Plaintiff has failed to point to evidence which contradicts the conclusions of either the ALJ or Dr. Bertucci (Doc. 12, pp. 5-6). Though it would be easy to note the near-mirror image of the ALJ's conclusions with

9

the opinions of Bertucci as justification for discounting the ALJ's determination, the Court declines to do so as the other evidence of record supports the ALJ's conclusions.

In connection with this claim, Plaintiff has cited Social Security Ruling 96-6p (Doc. 12, p. 5).  The Court notes the following language from that ruling:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.  For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

Social Security Ruling 96-6p.  Plaintiff has specifically directed the Court's attention to the language in the ruling stating that the opinion of the non-examining physician be based on a review of the complete case record.  Taylor specifically argues that, "[a]t best, he could have reviewed exhibits 1F

through 5F.  After he submitted his form, ten additional exhibits totaling 149 pages were added, with medical records dated through May 2011 and evaluation and treatment from Cahaba Early Intervention Services" (Doc. 5, p. 6).

The Court has reviewed the record evidence submitted after Dr. Bertucci's form opinion was completed.  As noted earlier, the Court found that the other evidence of record supported the ALJ's conclusions; at the very least, the other evidence did not contradict those opinions.  Taylor's argument otherwise is without merit.

Plaintiff next claims that the ALJ did not properly consider the combination of his impairments as he is required to do (Doc. 12, pp. 6-7).  It is true that "the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 1382c(a)(3)(G).  The Eleventh Circuit Court of Appeals has noted this instruction and further found that "[i]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.

1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, he lists Plaintiff's severe impairments and concludes by saying that he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926)" (Tr. 14).  This specific language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4").

The Court notes Taylor's citation to Seventh Circuit law which found that this type of "'boilerplate' language is 'meaningless and unhelpful to a reviewing court.'"  (Doc. 12, pp. 7-8) (*citing Bjornson v. Astrue*, No. 11-2422 (7th Cir. January 31, 2012) and *Smith v. Astrue*, No. 11-2838 (7th Cir. March 12, 2012)).  The Court has reviewed those cases.  The Court first notes that *Bjornson* and *Smith* both deal with the issue of the ALJ's discounting of the Plaintiff's testimony.

12

*See Bjornson v. Astrue*, 671 F.3d 640, 644-47 (7th Cir. 2012); *Smith v. Astrue*, 467 Fed.Appx. 507, 511 (7th Cir. 2012). As such, these cases are not applicable to this discussion of the ALJ's consideration of the combination of Taylor's impairments. Furthermore, Seventh Circuit law would not take priority, in this Court, over established Eleventh Circuit precedent. Plaintiff's claim is without merit.

Finally, Taylor has asserted that the ALJ failed to consider the frequency of treatment and functional equivalence under Listing 103.03 (Doc. 12). More specifically, Plaintiff asserts the following:

> Listing 103.03B provides for a finding of disability with asthma attacks requiring physician intervention occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours counts as two attacks. The ALJ did not discuss the frequency of treatment required by K.T.
> During the year 2009, K.T. had 27 doctor visits, 4 emergency room visits, and 2 inpatient treatments. During the year 2010, K.T. had 10 doctor visits, 3 emergency room visits, and began receiving home visits from early intervention. Through the first five months of 2011, K.T. had 9 doctor visits and multiple home visits from early intervention. The ALJ erred in failing to discuss whether the frequency of medical treatment met or equaled Listing 103.03B.

(Doc. 12, p. 8).

The Court notes that Listing 103.03B requires that a claimant have asthma attacks

> in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 103.03B (2012).  Listing 3.00C, explaining attacks, states as follows:

> When a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma, cystic fibrosis, bronchiectasis, or chronic asthmatic bronchitis, the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment.  Documentation for these exacerbations should include available hospital, emergency facility and/or physician records indicating the dates of treatment; clinical and laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies (ABGS); the treatment administered; the time period required for treatment; and the clinical response.  Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04,

14

>       and 3.07, are defined as prolonged
>       symptomatic episodes lasting one or more
>       days and requiring intensive treatment, such
>       as intravenous bronchodilator or antibiotic
>       administration or prolonged inhalational
>       bronchodilator therapy in a hospital,
>       emergency room or equivalent setting.
>       Hospital admissions are defined as inpatient
>       hospitalizations for longer than 24 hours.
>       The medical evidence must also include
>       information documenting adherence to a
>       prescribed regimen of treatment as well as a
>       description of physical signs.  For asthma,
>       the medical evidence should include
>       spirometric results obtained between attacks
>       that document the presence of baseline
>       airflow obstruction.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 3.00C (2012).

In responding to this claim, Defendant has argued that the medical evidence does not document the "intensive treatment" defined in the Listing (Doc. 15, p. 12).  For example, one of the hospitalizations referenced by Taylor was not for asthma, but for pneumonitis and esophageal reflux (Tr. 187); though the Government argues that the second hospitalization also failed to be for asthma, the discharge page clearly references asthma among the diagnoses (Tr. 168; *see generally* Tr. 168-79). Defendant is correct, though, in pointing out that the medical intervention generally only required a medication change and did not necessitate "intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy"

15

contemplated in Listing 3.00C.  Additionally, ABGS studies and spirometric test results are not present in the record to document the extreme impairment asserted by Taylor.  Though Plaintiff has brought forth a record of repeated medical assistance in this action, it does not support the intensity of intervention required in Listing 103.03B.  As such, the Court finds no merit in Taylor's assertion that the ALJ did not properly consider the frequency of treatment and functional equivalence under Listing 103.03.

Plaintiff raises three claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, see *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 26th day of July, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE